MARY BYRNE, AN INFANT, BY GUARDIAN, ETC., RESPONDENT, v.
THE NEW YORK CENTRAL AND HUDSON RIVER
RAILROAD COMPANY, APPELLANT.

*Negligence — duty of a railroad company to give notice on approaching a street or
highway — when an alley is to be deemed a highway.*

APPEAL from a judgment in favor of the plaintiff, entered upon
the verdict of a jury, and from an order denying a motion for a new
trial, made upon the minutes of the justice before whom the action
was tried.

The action was brought to recover damages for injuries sustained
by the plaintiff by being struck by one of the defendant's trains,
while she was crossing the railroad track in the city of Troy. The
case has already been before the General Term, the opinion then
delivered being reported in 14 Hun, at page 322.

The court at General Term said: " Since the decision of this case
in 83 New York, 620, it must be held that, on the evidence in the
case, the jury might find that, by a preponderance of proof, the
plaintiff had showed herself free from contributory negligence.
(*Hart* v. *Hudson River Bridge Co.*, 84 N. Y., 56.)

" The only question is whether the court erred in charging that
the company were bound to give warning by ringing the bell or
blowing the whistle, as the train approached this alley, and in
refusing to charge that what was called the alley was not a public
street within the meaning of the statute.

" This provision of the statute is evidently intended for the pro-
tection of those who cross the track. It would have seemed, there-
fore, that the legislature, in speaking of a public traveled road or
street, must have intended a place which was in fact publicly trav-
eled as a road or street, without much reference to the question
whether it was legally a highway. But a different rule seems to be
laid down in *Cordell* v. *New York Central and Hudson River
Railroad* (64 N. Y., 535).

" Looking then at the facts in this case bearing on the question,
whether this alley was a highway, we may say, in brief, that in 1847
a large piece of land in the southerly part of Troy was bought by

an association. It was laid out into lots, streets and alleys. The streets and alleys running north and south were continuations in name and direction of existing streets in Troy. The streets running east and west were named after the presidents. The lots were numbered and the map was filed. The property was partitioned about that time among the owners. The land was then below the proper level. The streets and alleys were gradually filled up, and lots have been sold by the owners. It can hardly be doubted that there was a dedication by the owners of these streets and alleys.

" The Poestenkill crosses this piece of land, from east to west, and there was no bridge across it at the end of the alley where this accident happened. Between Madison street and the Poestenkill, therefore, there was little traveling, as there was no egress at the north end.

" Some of the streets on this piece of ground have been worked by the city; so that as to them there is abundant proof of acceptance of the dedication. The defendant insists that in the absence of proof of some act showing an acceptance by the city of this alley, at the place where the accident happened, the plaintiff has not proved the place to be a public traveled street. (*Niagara Falls Suspension Bridge Co.* v. *Bachman*, 66 N. Y., 261.) In that case, however, there was on the map filed by the owners an express reservation of a discretionary power to direct how much of the streets should be devoted to public use. In the present case there is nothing of that kind. There appears to have been an unqualified dedication of all the streets and alleys.

" This alley, at the point in question, was filled to the proper level; and there were buildings on it from Madison street northward towards the place of the accident. Teams connected with the iron-works' store used the alley to deliver and receive goods at the store which stood upon the alley.

" There was evidence that in some of the streets within this original piece city sewers had been built and city lamps set up. Some of these improvements had been near to this alley, but none in that part of the alley north of Madison street.

" Upon the whole evidence we think the court was correct in holding that this was a place where the defendants were required to give the statutory warning. This does not seem to us to be like

the case last mentioned, where the village had opened and worked a distinct part of a street, leaving another part ‘ sparsely covered with forest trees,’ etc. Here the north and south streets and alleys were the evident continuations of those in the rest of the city. As they were from time to time brought into a condition for use, the streets were, as we have seen, worked like other streets. We do not know that any sewers or lights were needed in this alley. Their absence, then, is not to be considered a rejection of the alley.”

*Esek Cowen*, for the appellant.

*R. A. Parmenter*, for the respondent.

Opinion *Per Curiam*.

Present — LEARNED, P. J., BOOKES and WESTBROOK, JJ.

Judgment and order affirmed, with costs.